# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF VIRGINIA
# Alexandria Division

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Case No. 1:16:cr169 |
| | ) |
| RAUSHI CONRAD, | ) |
| | ) Hon. Gerald B. Lee |
| Defendant. | ) |
| | ) |

## DEFENDANT'S POSITION ON SENTENCING FACTORS

Pursuant to Rule 32 of the Federal Rules of Criminal Procedure, Section 6A1.3 of the United States Sentencing Guidelines ("Guidelines"), and this Court's Policy Regarding Procedures to be Followed in Guideline Sentencing, the Defendant, Raushi Conrad, through counsel, states that he has received and reviewed the Presentence Investigation Report ("PSR") prepared in this case.

On June 15, 2017 a jury convicted Mr. Conrad of two (2) different counts. Mr. Conrad was found guilty of Conspiracy to Commit Bribery and Acceptance of Bribes by a Public Official.

According to the submitted PSR, Mr. Conrad's total offense level is twenty-seven (32), his criminal history category is I, and his guideline range is between 121 -151 months.

Mr. Conrad objects to the probation office's calculation in that it incorporates an increase, alleging that Mr. Conrad was a public official in a high-level decision-making position.

In addition, Mr. Conrad objects to the loss amount in the PSR. The PSR states that the defendant's action caused the government a loss of $1,079,161.02. The proper level increase should be twelve (12) instead of fourteen (14).

If this Court excludes the increase for a high-level official and uses Mr. Conrad's submitted valuation of the loss amount his final offense level will decrease to a level twenty-six (26). Consequently, Mr. Conrad submits that the appropriate guideline range is 63-78 months.

For the reasons set forth below, Conrad submits that a variant sentence of not more than twenty-four (24) months of incarceration is sufficient to meet the aims of sentencing.

I. **OBJECTIONS TO PSR**

The PSR states that Mr. Conrad should receive an increase because he was a public official in a high-level decision-making position. Upon review of the application notes, the increase is appropriate if a person is in a position characterized by direct authority to make decisions for, or on behalf of, a government department, agency, or other government entity, or by a substantial influence over the decision making process."

During the Government investigation and trial, it was clear that Mr. Conrad had at least 2-3 supervisors that he had to see approval from in order to take action. Eddie Donnell, Brad Burke, and later Kim Sins were all individuals who were responsible to oversee and give final approval on work performed by the Defendant. In addition, Kim Bryant, the person in charge of choosing prime contractors for awarded Commerce BIS contracts, testified that neither he nor Mr. Conrad could influence a prime contractor on who should be chosen as the sub-contractor. In this case, the decision was left solely to Tridea Works, the prime contractor.

The PSR goes on to submit that Mr. Conrad's action caused the government a loss of $1,079,161.02. Mr. Conrad submits that the contract was never contemplated to reach that amount. Yet, it was Mr. Bedford's unforeseeable theft and fraud upon the Government that caused his company to reap such high profits. Mr. Bedford and others connected to the contract testified that Conrad was not privy to the inflated invoices and was unaware that Mr. Bedford was committing fraud by listing false charges. Thus, Mr. Conrad should only be held liable for what the intended amount of the contract was supposed to be.

In addition, Mr. Conrad objects to the loss amount because it incorporates supplies that he paid for. Mr. Conrad produced bank records which showed multiple purchases from home improvement locations, which would reflect the purchase of supplies.

II. **APPLICATION OF U.S.C. §3553(a) FACTORS**

In United States v. Booker the Supreme Court ruled that its Sixth Amendment holdings in Blakely v. Washington, 124 S.Ct. 2531 (2004) and Apprendi v. New Jersey, 530 U.S. 455 (2000) applied to the Federal Sentencing Guidelines. United States v. Booker, 125 S.Ct. 738, 756 (2005). The Court further held that the provisions of the Federal Sentencing Reform Act of 1984 that make the Guidelines mandatory or which rely upon the Guidelines' mandatory nature, were incompatible with its Sixth Amendment holding. Booker, 125 S.Ct. at 756. As a result, the Court

severed and excised those provisions, "mak[ing] the Guidelines effectively advisory." 125 S.Ct. at 757.

Largely as a result of the Supreme Court's more recent sentencing pronouncements in Gall v. United States, 128 S.Ct. 586 (2007) and Kimbrough v. United States, 128 S.Ct. 558 (2007), the sentencing options available to district court judges have "significantly broadened." United States v. Moon, 513 F.3d 527, 544 (6th Cir. 2008), quoting Gall, 128 S.Ct. at 602. District courts are now free from any requirement that they mechanically adhere to the tight strictures of the guidelines, nor are courts required to even presume that the guidelines provide an appropriate sentence in a given case.

Recognizing that the guidelines are simply the "starting point" in a sentencing analysis, district courts must delve deeper, and make an "individualized assessment based on the facts presented." Gall, 128 S.Ct. at 597. In making an individualized assessment, the district court is required to consider all of the factors outlined in 18 U.S.C.A. §3553(a), and is permitted to tailor the sentence in light of other statutory concerns. Kimbrough, 128 S.Ct. at 570. A district court may reasonably determine that a within guidelines sentence does not serve the objectives of sentencing, even if that determination ultimately rests on a disagreement with the guidelines. Kimbrough, 128 S.Ct. at 564. See United States v. Pugh, 515 F.3d 1179, 1190-91 (11th Cir. 2008).

In the final analysis, the goal of performing an individualized sentencing assessment is to arrive at a just sentence, one "sufficient, but not greater than necessary," 18 U.S.C.A. §3553(a), to serve the purposes of sentencing set forth in §3553(a)(2). United States v. McBride, 511 F.3d 1293, 1297 (11th Cir. 2007). The sentencing court is "free to conclude that the applicable guideline range gives too much or too little weight to one or more factors, either as applied in a particular case or as a matter of policy." United States v. Campos-Maldanado, 531 F.3d. 337 (5th Cir. 2008).

A district court must give respectful consideration of the guidelines in determining a sufficient sentence, Gall, 128 S.Ct. at 594, but it may not presume that the guideline sentence is the correct one. Rita v. United States, 127 U.S. 2456, 2465 (2007). The court is free to consider whether the guideline sentence itself "fails to properly reflect §3553(a) considerations" in the case at hand, Rita, 127 S.Ct. at 2465, and/or whether the guidelines at issue exemplifies the

Sentencing Commission's "exercise of its characteristic institutional role." Kimbrough, 128 S.Ct. at 575.

The offenses for which Mr. Conrad stands convicted do not mandate a minimum sentence of imprisonment. Congress not only envisioned, but accepted, the possibility that some defendants in Mr. Conrad's position would receive no jail time at all. In short, this is not a mandatory minimum. As the guidelines are now advisory, this court is not constrained from imposing an individualized sentence that does not exceed the statutory ceiling.

In Kimbrough v. United States, 128 S. Ct. 558 (2007), the Supreme Court held that the Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory factors detailed in 18 U.S.C. §3553(a). Courts must consider the recommended guideline range as one of seven co-equal statutory sentencing factors referenced in 18 U.S.C. §3553(a). *United States v. Booker*, 543 U.S. 220, 259-60 (2005). The factors to be considered are: (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) the kinds of sentences available, (c) the guideline range, (d) the need to avoid unwarranted sentencing disparities, (e) the need for restitution, and (f) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide for just punishment for the offense, to afford adequate deterrence, to protect the public from further crimes of the defendant and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a). After considering these factors, the Court has discretion to differ with the U.S.S.G.'s custody range, See Rita v. United States, 127 S. Ct. 2456 (2007). Furthermore, the sentencing courts must impose the minimum sentence that is sufficient to accomplish the objectives of §3553(a). A sentence of 12 months is appropriate following a consideration of the 3553(a) factors.

### A. The Nature and Circumstances of the Offense

Mr. Conrad was tried and convicted by a jury for the offenses outlined in the Indictment. The jury concluded that Mr. Conrad conspired with James Bedford and another conspirator to commit several federal offenses related to a government contract with Mr. Conrad's employer, the Department of Commerce. The jury concluded that Mr. Conrad took an official action in order to facilitate Bedford Images procurement of the government contract in exchange for

payments from Bedford Images.  Bedford Images was owned by James Bedford, who testified that in late 2010, Mr. Conrad submitted invoices to his company.  Furthermore, Mr. Bedford testified that he believed the invoices were requested based on Mr. Conrad's past and continued assistance with procurement of the contract with the Department of Commerce. During the time that the contracts were procured, Mr. Conrad was an employee with the Department of Commerce.  Mr. Bedford testified that he paid the invoices, although there was never any discussion between him and Mr. Conrad, as to what the payments were for.  In all, Mr. Conrad received $208,000 in payments from Bedford Images.

The Government also submitted the testimony of several construction contractors and employees of James Bedford's business partner, Glenn Bertrand, who stated that they were instructed to preform work on Mr. Conrad's home. The witnesses stated that Mr. Conrad did not pay them for the work that they were asked to complete.  Rather, the witnesses testified that they were paid by Glenn Bertrand or James Bedford.

### B. The History and Characteristics of the Defendant

Mr. Conrad is 43-years-old and has spent the majority of his life in the Northern Virginia area.  He currently resides in the area with his wife and children in a single family home. Mr. Conrad resigned from the U.S. Department of Commerce in 2011 and has since been working as a consultant and managing a sport complex, prior to selling the facility.

Mr. Conrad was born in Washington D.C. While his father and mother were in a relationship at the time, the relationship did not last long.  Mr. Conrad was raised by this mother, and has had sporadic contact with his father throughout his life.

Mr. Conrad's mother re-married, which resulted in the birth of his only sibling. He recalls that the relationship was abusive and toxic. His step father would physically abuse his mother in Mr. Conrad's presence.

Despite a turbulent upbringing, Mr. Conrad's mother, who is employed by the federal government was able to adequately provide for the family and Mr. Conrad's needs were taken care of.

Mr. Conrad's mother stressed education, and he graduated from Centerville High school and went on to attend college and obtained an Associate's Degree from Northern Virginia Community College in Annandale, Virginia.

In 1996, Mr. Conrad began his employment with the United States Department of Commerce. He immediately excelled in his position and was a dedicated employee for several years. Mr. Conrad's hard work and diligence in reflected in the fact that he was ultimately promoted several times within his division. Mr. Conrad remained with the Department of Commerce until 2011, when he resigned due to the conflict of interest that revolve around the facts of this cases.

In 1999, Mr. Conrad married the love of his life. The two were married in Chantilly, Virginia. The couple are the proud parents of five children. Mr. Conrad's oldest child is seventeen (17) and youngest child is nine (9). The children have always resided with their parents and have never spent any significant time separated from either them. Mr. Conrad is an active father and takes the children on vacations to visit theme parks and is also active in their extracurricular school activities.

Mr. Conrad's marriage also resulted in him becoming involved in the rotisserie chicken business. Mr. Conrad's wife and father-in-law own several restaurant locations that specialize in

"Peruvian Style" chicken and other Latino dishes. Although, Mr. Conrad is not the listed owner of any of the locations, he has managed at least two locations in the past, while also working with the Department of Commerce. He his Department of Commerce supervisor's permission to work both positions. Unfortunately, Mr. Conrad was far from "a natural" when it came to managing a restaurant and feel behind on sale expectations and entered into some ill-advised business contracts. Mr. Conrad has had financial woes that date back for years and he has filed for bankruptcy in the past.

Mr. Conrad was in relatively good health until a car accident that occurred this past April. Mr. Conrad's medical records reveal that he suffered from a concussion and the effects are still lingering. He is proscribed over half a dozen different medications to help alleviate the symptoms that he may feel day to day.

Mr. Conrad has never had any issues with drugs or alcohol. His energy throughout the years have been focused on his family, work, and business management. He is a loving and devoted husband to his wife an father to his children.

**C. The Need for the Sentence to Reflect the Basic Aims of Sentencing: "just punishment," deterrence, and rehabilitation**

Mr. Conrad is currently 43 years old. Prior to this current legal matter, Mr. Conrad had no prior convictions. Thus he has never served any period of incarceration. He's been a complete law abiding citizen and is devastated that the jury has found him guilty to two (2) felony offenses. A variant sentence of twenty-four (24) months of incarceration is more than enough to accomplish the aims of sentencing. Mr. Conrad has never served a single day in jail and a period to twenty-four (24) months is certainly sufficient to ensure that rehabilitation and just punishment is received.

Moreover, a sentence of twenty-four (24) months would be a strong deterrent to similar situated defendants whom have abided by the law their entire lives and have never served any time in jail.

Mr. Conrad will have to come to grips with the fact that for the first time he will be separated from his beloved wife and precious children. He will also have to explain his absence to his children who do not know about his current legal troubles. There is no doubt that explaining to a twenty-four (24) month absence to a nine (9) year old will be one of the most difficult moments of Mr. Conrad's life.

A sentence of twenty-four (24) months will also avoid any unwarranted sentencing disparities. Mr. Conrad's co-defendant James Bedford received a sentence of in home confinement followed by a period of supervised release. In 2016, former Virginia Governor Robert McDonnell was sentenced to serve a period of twenty-four (24) months of incarceration after being convicted of eleven (11) felony corruption related offenses. His conviction was ultimately overturned by the United States Supreme Court. However, this case is referenced because this was the sentence fashioned by a United States District Court Judge in this district and his guideline range was similar to Mr. Conrad's.

The prosecutions of the defendant's in the "Fat Leonard" bribery case which involved over 35 million dollars has resulted in sentences as low as eighteen (18) months (Admiral Robert Gilbeau), and thirty (30) months (Lt. Cmdr. Genry Debord), and forty-six (46) months (Linda Raja). The amount of loss in that matter dwarfs the figure referenced in Mr. Conrad's matter.

**<u>CONCLUSION</u>**

For the reasons stated above, Mr. Conrad requests that this court sentence him to a period of incarceration of no more than twenty-four (24) months, recommend that he be placed be housed

at a B.O.P. facility as close to Northern Virginia as possible, and that he be allowed to self-surrender after B.OP. designates him to a facility. It is Mr. Conrad's position that this sentence is sufficient to accomplish the objectives of sentencing as detailed in 18 U.S.C. §3553(a).

        Respectfully Submitted,
        RAUSHI CONRAD
        By Counsel

        By: /s/
        Jonathan A. Simms (VSB 75663)
        The Simms Firm, PLC
        10560 Main Street
        Suite 510
        Fairfax, Virginia 22030
        Ph (703) 383-0636
        (703) 995-0850
        jsimms@simmsfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2017 I will electronically file the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Jamar Walker, Esquire
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

        By: /s/
        Jonathan A. Simms (VSB 75663)
        The Simms Firm, PLC
        10560 Main Street
        Suite 510
        Fairfax, Virginia 22030
        Ph (703) 383-0636
        (703) 995-0850

jsimms@simmsfirm.com